### SPARROW-KROLL LUMBER CO. *v.* VAN SLYCK.

CONDITIONAL SALE—INSTRUCTIONS TO JURY.

>Defendant was working for plaintiff under a lumbering contract, and plaintiff purchased for him a team under an agreement that the title should remain in plaintiff until paid for. Plaintiff claimed the horses were to be paid for in work under the contract, and introduced his general account in evidence, showing a large balance due plaintiff. Defendant claimed that he was to pay for them by the sale of certain logs, and that more than enough had been sold to pay for them. *Held*, that it was not error to charge that the general account and final balance had nothing to do with the case except to show what the agreement was, and whether the purchase price had been paid.

Error to Houghton; Streeter, J. Submitted April 24, 1902. (Docket No. 30.) Decided May 8, 1902.

Replevin by the Sparrow-Kroll Lumber Company against Walter G. Van Slyck. From a judgment for defendant, plaintiff brings error. Affirmed.

*Gray, Haire & Rice*, for appellant.

*Chadbourne & Rees*, for appellee.

Moore, J. This is an action of replevin to recover the possession of horses, the ownership of which is claimed by the respective parties. The giving of the following paper was part of the transaction:

"Memorandum of agreement made and entered into this fifteenth day of December, 1897. It is hereby understood and agreed that, inasmuch as C. A. Van Slyck & Sons are desirous of purchasing two pair of horses of Jacob Ullman, and in order that said Van Slyck & Sons can obtain said horses, the Sparrow-Kroll Lumber Co. agree to and do pay said Jacob Ullman the sum of five hundred and five dollars ($505.00) for said horses: *Provided,* however, that the said horses so purchased shall be the property of the said Sparrow-Kroll Lumber Co. until fully paid for by said Van Slyck & Sons, and, in case said Van Slyck & Sons fail to pay said Sparrow-Kroll Lumber Co. on or before May 1st, 1898, said Van Slyck & Sons agree to deliver on demand said horses in good condition to said Sparrow-Kroll Lumber Co.

[Signed]     "C. A. Van Slyck & Sons."

In September prior to the making of this paper, Van Slyck & Sons entered into a written agreement with plaintiff to cut, skid, and haul certain logs for them. It is claimed by the plaintiff that, to enable Van Slyck & Sons to carry out this agreement, the horses in controversy were purchased, and were to be paid for out of the proceeds of the lumber contract, and that the teams were never paid for, but Van Slyck & Sons still owe plaintiff over $1,700. It is the claim of defendant that Van Slyck & Sons desired these horses, and asked Mr. Kroll to aid them in buying the teams; that Mr. Kroll suggested the lumber contract could probably take care of itself; and it was then agreed that if Van Slyck & Sons would sell to plaintiff certain logs they owned, at $6 and $7 per thousand, plaintiff would buy the teams, and apply the proceeds of the logs in payment for the teams; and that under this agreement more than enough logs were delivered to pay for the teams.

The testimony was in sharp conflict. The jury returned a verdict in favor of defendant. The only assignments of

error relate to the charge of the court. The court permitted the plaintiff to show its entire account with Van Slyck & Sons, and that Van Slyck & Sons were largely indebted to the plaintiff when these teams were bought. Complaint is made of what the judge said in his charge about this account. Particular stress is laid on the following language:

"Something was said in the progress of the case about the equities of the case being entirely with the plaintiff. I wish to say to you, gentlemen, that the balance as testified to on the general account between the plaintiff and the defendant, as existing in November and December, 1897, and the final balance, have absolutely nothing whatever to do with this case. That is a question that must be determined in another suit. The only possible bearing it could have would be to show the contract relation of the parties at the time the bargain with regard to the horses was made; that they were having other deals, some of them having been reduced to writing, and some of them without writing, oral bargains; and you will take all the circumstances together, so far as they bear on the single question of ownership. That is the only one. Let us put everything else out of our mind."

We cannot understand fully the charge without reading what immediately preceded this statement. It was as follows:

"If you find that it was agreed or understood that the logs sold by Van Slyck to the plaintiff were to be applied in payment of the purchase price of the horses, then all matters relating to the lumbering contract of September 25, 1897, and the state of the accounts between the parties, or the claim that Van Slyck, or his firm, is now indebted to the plaintiff, are immaterial, and have nothing to do with the question of the ownership of the horses. The plaintiff has no claim or lien upon the horses as security for, or by reason of, any indebtedness to the plaintiff, and the question of such indebtedness is immaterial in this case, except in so far as it may have a bearing upon the question as to whether the purchase price of the horses was paid, and you will not consider the question of such indebtedness as having any application to this case except on that one question. In determining the one question as

to the ownership of the horses, the testimony with regard to the circumstances and surroundings of the parties at the time they entered into the contract should appear before the jury, in order that you may better determine that one question. But the question of who was the owner of the horses is the only one for us to determine."

The court gave plaintiff's second request as follows:

"The undisputed evidence shows that the horses in controversy in this case were to remain the property of the plaintiff until paid for. If you find from the testimony that the horses have not been paid for by the defendant, or any one in his behalf, you will return a verdict for the plaintiff."

We think it clear the jury were made to understand that if the horses were to be paid for from the proceeds of the logs, and sufficient logs were delivered to pay for them, the condition of the other portions of the account was immaterial; but, for the purpose of learning what the agreement was, the account might be taken into consideration. We do not think the jury could have misunderstood the charge.

The case was tried with exceptional fairness. The legal questions involved were stated clearly. The question of fact was in dispute. It was fairly submitted to the jury, who decided it in favor of the defendant, and we cannot disturb their verdict.

Judgment is affirmed.

Hooker, C. J., and Montgomery, J., concurred. Long and Grant, JJ., did not sit.